IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

PHILLIPI FELIX, individually and on
behalf of all others similarly situated,

    Plaintiff,

v.

RICHARD D. LONDON &
ASSOCIATES, P.C., et al.,

    Defendants.

Civil Action No.: GLR-19-2795

## MEMORANDUM OPINION

THIS MATTER is before the Court on Defendant Richard D. London & Associates, P.C.'s ("London") Motion to Dismiss, or, in the Alternative, Motion to Stay the Action and Compel Arbitration (ECF No. 5). The Motion is ripe for disposition, and no hearing is necessary. See Local Rule 105.6 (D.Md. 2018). For the reasons set forth below, the Court will grant the Motion, which it construes as a Rule 12(b)(3) motion for improper venue.

## I.  BACKGROUND

On or about April 22, 2016, Plaintiff Phillipi Felix executed a loan agreement (the "Note") with EnerBank for a principal amount of $20,000.00 at an interest rate of 2.99%. (Def.'s Mot. Dismiss Stay Action Compel Arbitration ["Mot. Dismiss"] at 3, ECF No. 5-1). The Note contains an arbitration clause, which states, in relevant part:

> ARBITRATION: All disputes, claims, or controversies arising from or relating to this Note or the relationships which result from this Note and/or any guaranty of this Note, or the validity of this arbitration clause or the entire Agreement, shall, at the election of either party, be resolved by binding arbitration . . . This arbitration agreement is made pursuant to a transaction in

interstate commerce, and shall be governed by the Federal Arbitration Act at 9 U.S.C. Section 1, et seq. . . . The parties agree and understand that they choose arbitration instead of litigation to resolve disputes . . . THE PARTIES VOLUNTARILY AND KNOWINGLY WAIVE ANY RIGHT TO A JURY TRIAL . . . The parties agree and understand that all disputes arising under case law, statutory law, and all other laws including, but not limited to, all contract, tort, and property disputes, will be subject to binding arbitration in accord with this Note.

(Mot. Dismiss Ex. 1 ["Note"] at 3, ECF No. 5-2) (emphasis in original).[1]

Felix defaulted on his obligation to repay EnerBank pursuant to the Note, and EnerBank retained London, a Maryland-based debt collector, to collect the unpaid balance. (Mot. Dismiss at 4; Compl. ¶¶ 9–10, ECF No. 1). On or about April 12, 2019, London sent Felix an initial collection letter (the "Letter") regarding the debt, informing Felix that "[London] represent[ed] EnerBank USA in the matter of [his] indebtedness to [EnerBank] in the amount of $18953.23, plus uncollected interest of $621.83 as of June 18, 2018, plus interest at 2.99% per annum from June 18, 2018 and late charges of $150.00." (Compl. ¶¶ 27–28; Compl. Ex. A ["Letter"], ECF No. 1-2).

Felix alleges that the Letter (1) did not clearly state the amount of the debt because it referenced a 2.99% interest rate without identifying the dollar amount of that interest; (2) failed to identify whether the interest was derived solely from the principal balance or from the balance plus past due interest; and (3) failed to explain whether the extra costs and fees were already included in the $18,952.23. (Compl. ¶¶ 31–35).

---

[1] Citations to the Note refer to the pagination assigned by the Court's Case Management and Electronic Case Files ("CM/ECF") system.

On September 23, 2019, Felix filed a class action Complaint against London, seeking to represent all Maryland residents who received a collection letter from London, either one year prior to the filing of this action or twenty-one days thereafter, that failed to clearly state the balance due.[2] (Compl. ¶ 13). The Complaint alleges violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692e, et seq. (Count I) and violation of FDCPA, 15 U.S.C. § 1692g, et seq. (Count II). (Id. ¶¶ 38–47). Felix seeks class certification and damages. (Id. at 11).[3]

London filed a Motion to Dismiss on December 10, 2019. (ECF No. 5). On January 14, 2020, Felix filed an Opposition. (ECF No. 9). London filed a Reply on January 28, 2020. (ECF No. 10).

## II.   DISCUSSION

### A.   Standard of Review

London seeks dismissal of the Complaint, arguing that Felix is bound by the Note's arbitration clause pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq. (2018). The FAA "requires courts to enforce covered arbitration agreements according to their terms." Lamps Plus, Inc. v. Varela, 139 S.Ct. 1407, 1412 (2019).

The United States Supreme Court has observed that an arbitration clause is "a specialized kind of forum-selection clause that posits not only the situs of suit but also the

---

[2] Felix has also named as Defendants John Does 1–25. However, Felix has not identified or served additional defendants. Accordingly, John Does 1–25 will be dismissed from suit.

[3] Citations to the Complaint refer to the pagination assigned by the Court's Case Management and Electronic Case Files ("CM/ECF") system.

procedure to be used in resolving the dispute." Scherk v. Alberto-Culver Co., 417 U.S. 506, 519 (1974). Similarly, in Sucampo Pharmaceuticals, Inc. v. Astellas Pharma, Inc., 471 F.3d 544, 550 (4th Cir. 2006), the United States Court of Appeals for the Fourth Circuit concluded that "a motion to dismiss based on a forum-selection clause," such as an arbitration provision, "should be properly treated under Rule 12(b)(3) as a motion to dismiss on the basis of improper venue." In reaching that conclusion, the Fourth Circuit recognized that "Supreme Court precedent suggests that [Rule] 12(b)(6) is not the appropriate motion for enforcing a forum-selection clause." Sucampo, 471 F.3d at 549. It observed that "because a 12(b)(6) motion may be brought at any time prior to adjudication on the merits, analyzing forum-selection clauses under Rule 12(b)(6) would present some of the same timing concerns as in the 12(b)(1) context." Id. (citations omitted).

Guided by Scherk and Sucampo, the Court finds it prudent to construe London's Motion as a Rule 12(b)(3) motion for improper venue. "[W]hen a challenge to venue is raised, the plaintiff bears the burden of demonstrating that venue is appropriate." Stone v. Wells Fargo Bank, N.A., 361 F.Supp.3d 539, 549 (D.Md. 2019). Where no evidentiary hearing is held, "the plaintiff need only make a prima facie showing that venue is proper." Id. (quoting CareFirst, Inc. v. Taylor, 235 F.Supp.3d 724, 732 (D.Md. 2017)). In assessing whether there has been a prima facie showing of proper venue, the Court must view the facts in the light most favorable to the plaintiff. See id. at 732; see also Aggarao v. MOL Ship Mgmt. Co., 675 F.3d 355, 366 (4th Cir. 2012).

B.    <u>Analysis</u>

To compel arbitration under the FAA, the moving party must demonstrate: (1) "the existence of a dispute between the parties"; (2) "a written agreement that includes an arbitration provision which purports to cover the dispute"; (3) "the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce"; and (4) "the failure, neglect or refusal of the defendant to arbitrate the dispute." <u>Galloway v. Santander Consumer USA, Inc.</u>, 819 F.3d 79, 84 (4th Cir. 2016) (internal quotation marks omitted) (quoting <u>Rota-McLarty v. Santander Consumer USA, Inc.</u>, 700 F.3d 690, 696 n.6 (4th Cir. 2012)). Here, only the second <u>Galloway</u> prong is in dispute.

London argues that Felix's allegations concerning London's debt collection efforts on behalf of EnerBank directly relate to, and arise from, Felix's default on the Note and, as such, fall squarely within the scope of the arbitration clause, which pertains to "[a]ll disputes, claims, or controversies arising from or relating to this Note or the relationships which result from this Note and/or any guaranty of this Note, or the validity of this arbitration clause or the entire Agreement." (Note at 3). Conversely, Felix asserts that there was no meeting of the minds regarding an agreement to arbitrate claims because the clause is ambiguous, rendering it unenforceable. Felix also argues that even if the arbitration clause is enforceable, his FDCPA claims fall outside the scope of the clause, because the claims are unrelated statutory claims. Lastly, Felix argues that, to the extent his FDCPA

claims are covered by the arbitration clause, enforcing the clause would be unconscionable because it would lead to "absurd results." The Court considers each argument in turn.[4]

### 1.    Ambiguity and Unenforceability of the Arbitration Clause

Felix argues that the arbitration clause is ambiguous because there was never a mutual understanding concerning what rights, if any, he reserved to litigate and what rights he agreed to arbitrate. Specifically, Felix asserts that the first line in the arbitration clause— "[a]ll disputes, claims, or controversies arising from or relating to this Note or the relationships which result from this Note and/or any guaranty of this Note, or the validity of this arbitration clause or the entire Agreement, shall, at the election of either party, be resolved by binding arbitration"—is inconsistent with the following sentences insofar as they imply that the parties may litigate their dispute: (1) "The parties . . . choose arbitration instead of litigation to resolve disputes"; (2) "The parties . . . have a right or opportunity to litigate disputes through a court, but . . . they prefer . . . arbitration, except as provided herein"; (3) THE PARTIES VOLUNTARILY AND KNOWINGLY WAIVE ANY RIGHT THEY HAVE TO A JURY TRIAL EITHER PURSUANT TO ARBITRATION . . . OR PURSUANT TO A COURT ACTION BY YOU (AS

---

[4] To the extent Felix challenges London's right to compel arbitration as a nonsignatory to the underlying Note, "it is well-settled that a nonsignatory to a contract requiring arbitration can, in certain instances, enforce the arbitration provision against a signatory." Lomax v. Weinstock, Friedman & Friedman, P.A, No. CCB-13-1442, 2014 WL 176779, at *3 (D.Md. Jan. 15, 2014), aff'd sub nom. Lomax v. Weinstock, Friedman & Friedman, P.A., 583 F.App'x 100 (4th Cir. 2014). Equitable estoppel provides a basis for London to enforce the arbitration agreement between Felix and EnerBank in cases when, as here, "a signatory must rely on the terms of the written agreement [containing the arbitration clause] in asserting [its] claims." Id. (quoting Griggs v. Evans, 43 A.3d 1081, 1092 (Md.Ct.Spec.App. 2012)).

PROVIDED HEREIN)"; and (4) " . . . all disputes . . . will be subject to binding arbitration in accord with this Note." (Pl.'s Mem. Law Supp. Opp'n Def. Mot. Dismiss ["Pl.'s Opp'n"] at 12, ECF No. 9 (quoting Note at 3)). Felix also points to the Note's forum selection clause as a source of alleged confusion regarding his legal rights, arguing that its reference to "any suit, action or other proceeding relating to or arising out of this Note" is inconsistent with the arbitration clause. (Id. at 13 (quoting Note at 2)). The Court rejects Felix's illogical reading of the arbitration clause.

Under § 2 of the FAA, an arbitration contract is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2 (2018). Thus, like other contract provisions, arbitration agreements "may be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability.'" Rent-A-Center, West, Inc. v. Jackson, 561 U.S. 63, 68 (2010) (quoting Doctor's Assocs., Inc. v. Casarotto, 517 U.S. 681, 687 (1996)). Relatedly, because an agreement to arbitrate is indistinguishable from any other contractual obligation, "[a] party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." Levin v. Alms and Assoc., Inc., 634 F.3d 260, 266 (4th Cir. 2011) (internal quotation marks and citations omitted) (quoting Am. Recovery Corp. v. Computerized Thermal Imaging, 96 F.3d 88, 92 (4th Cir. 1996)).

To decide whether the parties agreed to arbitrate a certain matter, "courts generally . . . should apply ordinary state-law principles that govern the formation of contracts." First Options of Chi., Inc. v. Kaplan, 514 U.S. 938, 944 (1995). In Maryland, "[v]agueness of expression, indefiniteness, and uncertainty as to any of the essential terms

of an agreement, have often been held to prevent the creation of an enforceable contract." Timothy Murray, 1 <u>Corbin on Contracts</u> § 4.1 (rev.ed. 2020). "The test for ambiguity is whether a reasonably prudent person reading the language would find the disputed contract provision susceptible of more than one meaning." <u>Auslander v. Helfand</u>, 988 F.Supp. 576, 581 (D.Md. 1997) (citing <u>Dep't of Econ. & Cmty. Dev. v. Attman/Glazer P.B. Co.</u>, 594 A.2d 138, 144 (Md. 1991)).

Here, although the arbitration clause references "litigation," "court," and "jury trial," it clearly does so while explaining the signatories' agreement to forego litigation in lieu of arbitration. Read as intended, the arbitration agreement clearly informs the signatories: (1) that all disputes related to, or arising from, the Note must be arbitrated if one party so requests (2) because the parties are choosing arbitration over litigation, (3) and the parties are waiving their right to a jury trial (4) even though they recognize that they otherwise have a right to litigate the dispute. The language in the arbitration clause is clear, and Felix's attempt to characterize it as anything but is simply futile.[5] Because neither the arbitration clause as a whole nor its individual provisions are susceptible of more than one meaning, the clause is not too vague to be enforced.

### 2.   Arbitrability of FDCPA Claims and Unconscionability of Enforcement

Next, Felix asserts that his FDCPA claim is not arbitrable because "no reasonable person would have agreed to relinquish their right to assert claims in court based on entirely

---

[5] The forum selection clause is not limited to lawsuits and, by its very terms, includes "other proceedings," which clearly encompasses arbitration proceedings. Accordingly, the Court is equally unpersuaded by Felix's claim that the forum selection clause obfuscates his obligations under the arbitration clause.

unrelated statutory claims." (Pl.'s Opp'n at 18). He argues that enforcing the arbitration clause would be unconscionable and lead to "absurd" results. (Id.). Again, the Court is not persuaded.

This Court has previously recognized the arbitrability of FDCPA claims in a factually similar case. In Lomax v. Weinstock, Friedman & Friedman, P.A, the plaintiff financed a car that was subsequently repossessed and sold at auction when the plaintiff failed to make timely payments. No. CCB-13-1442, 2014 WL 176779, at *1 (D.Md. Jan. 15, 2014), aff'd sub nom. Lomax v. Weinstock, Friedman & Friedman, P.A., 583 F.App'x 100 (4th Cir. 2014). The finance company engaged a law firm to pursue a deficiency judgment against the plaintiff to secure the remaining balance of the car loan. Id. The plaintiff later filed an FDCPA suit against the law firm, and the firm sought to enforce the arbitration clause included in plaintiff's financing contract. Id. This Court rejected plaintiff's argument that the law firm, as a non-signatory to the underlying car loan, was unable to compel arbitration, and that plaintiff's claims fell outside the scope of the arbitration clause. Id. at *3–5.

As to the arbitrability of plaintiff's FDCPA and related claims, the court reiterated that "[t]he Fourth Circuit ha[s] consistently held that an arbitration clause encompassing all disputes 'arising out of or relating to' a contract embraces 'every dispute between the parties having a significant relationship to the contract regardless of the label attached to a dispute.'" Id. at *4 (quoting Wachovia Bank, Nat'l Ass'n v. Schmidt, 445 F.3d 762, 767 (4th Cir.2006)). The Lomax court found that the plaintiff's arbitration clause invoked those same broad terms, triggering "the significant relationship test." (Id.) (internal citations and

quotations omitted). Ultimately, the court concluded that the plaintiff's claims were arbitrable because they bore a "significant relationship" to the underlying contract even though the claims did not "implicate the terms" of the contract. (Id.).

The facts of this case are almost indistinguishable from Lomax, compelling the same result. Here, the arbitration clause invokes broad language and pertains to "[a]ll disputes, claims, or controversies arising from or relating to" Felix's contract with EnerBank. (Note at 3). Moreover, although Felix's FDCPA claims do not necessarily implicate the terms of the Note, they have a significant relationship to the Note. Specifically, Felix asserts that London violated the FDCPA by failing to adequately notify him of his total indebtedness, which stems from Felix's failure to repay the sums owed to EnerBank under the terms of the Note. Thus, the Court concludes that Felix's FDCPA claim is arbitrable because it has a significant relationship to his underlying Note with EnerBank.

Finally, Felix argues that even if his FDCPA claims are within the scope of the arbitration clause, enforcing the clause would be procedurally unconscionable because the contract is an adhesion contract that "was offered on a take-it-or-leave-it basis" and because that "the arbitration clause is buried in prolix and fine print, and the key provisions waiving his right to litigate, with only one exception, are not set off in bold."[6] (Pl.'s Opp'n at 19–20). Felix also argues that enforcing the clause would be substantively unconscionable because it is too broad. The Court disagrees.

---

[6] As to procedural unconscionability, Felix also argues that the arbitration clause is ambiguous. The Court has already rejected this argument and declines to reconsider it in the context of procedural unconscionability.

"Procedural unconscionability concerns the process of making a contract and includes such devices as the use of fine print and convoluted or unclear language, as well as deficiencies in the contract formation process, such as deception or a refusal to bargain over contract terms." Rankin v. Brinton Woods of Frankfort, LLC, 211 A.3d 645, 655 (Md. 2019) (internal quotations marks omitted) (quoting Stewart v. Stewart, 76 A.3d 1221, 1232 (Md.Ct.Spec.App. 2013)). Procedural unconscionability implicates contracts of adhesion, which are offered on a "take-it-or-leave-it" basis with no opportunity for negotiation. Rose v. New Day Fin., LLC, 816 F.Supp.2d 245, 257 (D.Md. 2011). When evaluating such one-sided contracts, courts will "look at the contract and its terms with some special care" and will refuse to enforce terms that are unconscionable, "but [ ] will not simply excise or ignore terms merely because . . . they may operate to the perceived detriment of the weaker party." Walther v. Sovereign Bank, 872 A.2d 735, 746 (2005) (quoting Meyer v. State Farm Fire & Cas. Co., 582 A.2d 275, 278 (Md. 1990)).

Substantive unconscionability, on the other hand, refers to contracts that are "unreasonably or grossly favorable to the more powerful party and includes terms that attempt to alter in an impermissible manner fundamental duties otherwise imposed by the law." Rankin, 211 A.3d at 656 (internal quotation marks and citation omitted). Maryland courts require both procedural and substantive unconscionability before they will refuse to enforce an arbitration agreement. Id. at 655.

Here, the Complaint is completely devoid of any facts supporting Felix's claim that the Note was offered on a "take-it-or-leave-it" basis. Indeed, the Complaint does not even identify the terms of the Note or the circumstances under which Felix accepted the Note.

As to Felix's financial obligation to EnerBank, the Complaint merely asserts that "[s]ome time prior to April 12, 2019, an obligation was allegedly incurred to creditor EnerBank USA," (Compl. ¶ 23); that "[t]he EnerBank USA obligation arose out of transactions incurred primarily for personal, family or household purposes," (id. ¶ 24); and "the alleged EnerBank USA obligation is a 'debt' as defined by 15 U.S.C.§ 1692a(5)," (id. ¶ 24). Having failed to provide any useful facts regarding the underlying Note with EnerBank in his Complaint, Felix cannot assert, for the first time in his Opposition, that the contract was so one-sided as to render it procedurally unconscionable and therefore unenforceable. See Zachair, Ltd. v. Driggs, 965 F.Supp. 741, 748 n.4 (D.Md. 1997) aff'd, 141 F.3d 1162 (4th Cir. 1998) (explaining that a plaintiff is "bound by the allegations contained in its complaint and cannot, through the use of motion briefs, amend the complaint").

The Court is equally unpersuaded by Felix's assertion that the arbitration clause was buried in the fine print. The contract between Felix and EnerBank consists of a three-page document entitled "NOTE & DISCLOSURE STATEMENT (including Arbitration Clause)." (Note at 1). The arbitration clause is at the bottom of the third page, and it is the only text enclosed in, and offset by, a black square. (See id. at 3). Furthermore, the word "arbitration" is capitalized and bolded. (Id.). The final paragraph in the Note states, in bolded, capitalized font: "BY SIGNING THE PAYMENT AUTHORIZATION FORM . . . THE ABOVE-NAMED BORROWER(S), ACKNOWLEDGE THAT I/WE HAVE READ AND UNDERSTAND ALL TERMS AND CONDITIONS OF THIS NOTE & DISCLOSURE STATEMENT, INCLUDING THE ARBITRATION CLAUSE." (Id.) (emphasis added). Based on the foregoing, the Court would be hard-pressed to

conclude that the arbitration clause was "buried" when the clause is incorporated in the title of the document, offset by a big, black box, and referenced in the acknowledgement statement. Thus, Felix's claim that the arbitration clause was hidden or otherwise buried in the contract is demonstrably false and fails to support a claim for procedural unconscionability.

Felix's has also failed to establish substantive unconscionability. In rejecting Felix's contention that the arbitration clause is too broad, this Court concluded that the arbitration clause only encompasses those claims—i.e., his FDCPA claims—bearing a significant relationship to the underlying Note. Thus, the arbitration clause is not so impermissibly broad that is supports a finding of substantive unconscionability.

In sum, Felix's FDCPA claim is arbitrable because it bears a significant relationship to the underlying Note, and Felix has failed to adequately allege both procedural and substantive unconscionability, which would preclude enforcement of the arbitration agreement.

Having determined that Felix's FDCPA claims are subject to arbitration and that the arbitration clause is not unenforceable due to ambiguity or unconscionability, the Court must determine if a stay or dismissal is appropriate. In Choice International Hotels, Inc. v. BSR Tropicana Resort, Inc., the Fourth Circuit held, "[n]otwithstanding the terms of § 3 [of the FAA] . . . dismissal is a proper remedy when all of the issues presented in a lawsuit are arbitrable." 252 F.3d 707, 709–10 (4th Cir. 2001). This Court has uniformly dismissed cases where all of the claims are arbitrable. See, e.g., Bey v. Midland Credit Mgmt., Inc., No. GJH-15-1329, 2016 WL 1226648, at *5 (D.Md. Mar. 23, 2016) (granting defendant's

motion to dismiss when it moved to stay or, in the alternative, dismiss, holding that "because all of the Plaintiff's claims . . . are subject to arbitration, dismissal of this action is appropriate"). Here, all of Felix's claims are arbitrable. Accordingly, the Court will dismiss rather than stay this case pending resolution of arbitration.

### III.   CONCLUSION

For the foregoing reasons, the Court will grant London's Motion to Dismiss, or, in the Alternative, Motion to Stay the Action and Compel Arbitration (ECF No. 5), construed as a Rule 12(b)(3) motion for improper venue. A separate Order follows.

Entered this 24th day of August, 2020.

_____/s/_____
George L. Russell, III
United States District Judge
